```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    EASTERN DIVISION


LYN FLEMING                                         PLAINTIFF

VS.                                CIVIL ACTION NO. 4:05CV8LN

UNITED PARCEL SERVICE, INC.,
AND MIKE BATES, INDIVIDUALLY                       DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on separate motions of defendants United Parcel Service (UPS) and Mike Bates for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Lyn Fleming has responded in opposition. The court, having considered the memoranda and submissions of the parties, along with the relevant authorities, concludes that defendants' motions should be granted.

On August 31, 2004,[1] plaintiff filed this action against his former employer UPS and his former supervisor Mike Bates, alleging claims against UPS for negligent supervision and intentional and/or negligent infliction of emotional distress and alleging claims against Bates for tortious interference with business and/or contractual relations and intentional and/or negligent infliction of emotional distress. His claims relate primarily to

---

[1] This case, initially filed in the Circuit Court of Lauderdale County, was removed to this court on September 28, 2004 and assigned to Judge Bramlette. On December 30, 2004, the case was re-assigned to Judge Starrett, and on January 7, 2005, the case was transferred to the Eastern Division on joint motion of the parties.

the termination of his employment with UPS, and as relief, he seeks reinstatement, compensatory damages and punitive damages.

In their separate motions for summary judgment, defendants contend that all of plaintiffs' claims are preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 et seq., and are without merit, in any event. They further contend that plaintiffs' claims for negligent supervision and negligent infliction are barred by the doctrine of workers' compensation exclusivity. In response, plaintiff concedes that the motions are well taken as to his negligence claims. He maintains that his remaining claims are fully actionable in this proceeding.

The basic facts which precipitated this lawsuit, as gleaned from the complaint and the parties' evidentiary submissions, are as follows. Fleming began work with UPS in 1995 as a part-time employee, moving in 2002 to a full-time driver position. In the years preceding 2004, he was repeatedly reprimanded for various infractions, including failure to follow supervisor's orders and involvement in "avoidable accidents." The record discloses, in fact, that the decision was made to terminate his employment on more than one occasion, though the termination on these occasions was ultimately reduced to a suspension. In January 2004, though, he was finally terminated.

The record regarding his termination reflects that on January 27, 2004, Fleming reported to his immediate supervisor, Dan Willis, that he had backed his UPS delivery truck into a concrete

barrier in the parking lot of a local mall.  Willis and defendant Mike Bates, the center manager, went to the mall to inspect the damage to the vehicle.  The vehicle was still operable after the accident, so Fleming finished his route.  According to plaintiff, while he was refueling the vehicle later that day, he noticed a scrape on the vehicle approximately seven inches long.  When plaintiff returned to the UPS center, he asked a UPS mechanic to repair the scrape he found.[2]  The mechanic reported the damage to his supervisor, who apparently notified Bates.

    Bates in turn questioned Fleming about the damage to the vehicle.  Fleming asserts that although he had no knowledge of how the damage had occurred, Bates suggested that Fleming had been involved in a second accident with the vehicle following the mall incident.  Fleming denied this, and the two discussed how the damage to the vehicle might have happened.  In response to questioning by Fleming about the presence of "tight points" along Fleming's route, he identified one such "tight point" on County Road 351.  Bates went to this location and documented what he believed to be damage to a fence at the location that he

---

[2] Defendants submit that plaintiff's failure to immediately report the scrape on the truck to his supervisor, rather than to the mechanic, constituted a violation of the collective bargaining agreement, which governed the terms and conditions of plaintiff's employment.  Plaintiff does not deny that he failed to notify his supervisor of the presence of the scrape, but he does not specifically address defendants' argument that this would violate the collective bargaining agreement.  He seems to take the position, though, that this is irrelevant since he was fired not because he failed to report a scrape on the vehicle but rather because he failed to report his involvement in an accident.

3

considered consistent with the damage to the vehicle.  According to defendants, Bates thus concluded that plaintiff had been involved in a second accident that he failed to report, which was a terminable offense under the terms of the collective bargaining agreement.

On January 29, 2004, Bates took Fleming "out of service pending the investigation of a serious incident."  The following day, plaintiff was sent a letter notifying him that his employment with UPS had been terminated for failing to report an accident as required by the collective bargaining agreement.  Fleming filed a grievance challenging his termination.  A grievance panel, after conducting a hearing on the matter, upheld plaintiff's discharge and issued a decision on February 17, 2004.  Fleming subsequently filed the instant action on August 31, 2004.

In their respective motions for summary judgment, defendants first submit that plaintiff's claims are preempted by § 301 of the LMRA.  In support of this argument, defendants point to Allis-Chalmers Corporation v. Lueck, in which the Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see Avco Corp. v. Aero Lodge, 735, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968), or dismissed as pre-empted by federal labor-contract law."  471 U.S. 202, 220, 105 S. Ct. 1904, 1916, 85 L. Ed. 2d 206 (1985).  In a related vein,

4

defendants argue that plaintiff is foreclosed from pursuing a claim under § 301 both because the collective bargaining agreement at issue contains a final and binding grievance resolution procedure and there is no allegation by plaintiff that the union breached its duty of fair representation, see Daigle v. Gulf State Utils. Co., 794 F.2d 974, 977 (5th Cir. 1986) ("If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure [and] he is bound by the procedure's result unless he proves the union breached its duty of fair representation."), and because any possible § 301 claim is time-barred as a result of plaintiff's failure to file suit within six months of notification of the grievance panel's decision, see Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 169, 103 S. Ct. 2281, 2290 (1983).  Finally, defendants contend that even if plaintiff's claims were not preempted, he has not identified any facts that would support actionable claims.

In the court's opinion, plaintiff's claims are clearly preempted.  From a review of his complaint, it appears his claim against Bates for tortious interference with contractual relations is based on his allegation that Bates intentionally misstated facts regarding an alleged second accident in order to get

5

plaintiff fired.[3]  According to plaintiff, such action by Bates constituted an interference with plaintiff's contractual employment relation with UPS.[4]  Under Mississippi law, in order to prevail on his claim for tortious interference with business and/or contractual relations, plaintiff must show (1) that Bates' acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damage and loss; and (4) that actual damage or loss resulted.  <u>Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.</u>, 910 So. 2d 1093, 1098 (Miss. 2005).  "The plaintiff must prove that an enforceable obligation existed between the plaintiff and another party (UPS)[,] [and] must prove that the contract would have been performed but for the alleged interference."  <u>Sentinel Industrial</u>

---

[3]  Although plaintiff has alleged tortious interference with contractual "and/or" business relations, the Mississippi Supreme Court has stated that "[w]hen a person causes another to breach a contract with some third person, the tort is one of interference with performance of a contract."  <u>Sentinel Industrial Contracting Corp. v. Kimmins Industrial Service Corp.</u>, 743 So. 2d 954, 969 (Miss. 1999).

[4]  In his response, plaintiff also asserts that "Bates tortiously interfered with his relationship with UPS because he filed a workers' compensation claim in December 2004."  It is unclear what he means by this, particularly given that plaintiff was discharged from employment with UPS in January 2004. Plaintiff does allege in his complaint that he sustained an on-the-job injury in December 2003, for which he initially chose not to file a worker's compensation claim; he later changed his mind and did file a worker's compensation claim for the injury sometime after his termination.  The court cannot discern from these allegations, or any others, any arguably viable claim for tortious interference in connection with the worker's compensation issue.

6

Contracting Corp. v. Kimmins Industrial Service Corp., 743 So. 2d 954, 969 (Miss. 1999) (citations omitted).

Plaintiff's allegations directly relate to plaintiff's employment and UPS's decision to terminate him based on Bates' recommendation and thus directly implicate his rights under the collective bargaining agreement to employment. Moreover, the discrepancy between Fleming's position on the alleged accident and Bates' characterization of the damage, investigation and exchange with Fleming was the subject of the grievance process following plaintiff's discharge. Accordingly, the court is of the opinion that this claim is pre-empted by the LMRA and as such is subject to dismissal.[5]

---

[5] Claims similar to these have routinely been held to be preempted by the LMRA. See, e.g., Freeman v. Duke Power Co., 114 Fed. Appx. 526, 533, 2004 WL 2151269, *5 (4th Cir. 2004) (concluding that employee's state law claims against his supervisors for tortious interference with contract based on allegation they intentionally induced employer to terminate his employment were preempted by the LMRA); International Union, United Mine Workers of Am. v. Covenant Coal Corp., 977 F.2d 895, 899 (4th Cir. 1992) ("Clearly, the third element of this cause of action [under Virginia law], requiring a breach or termination of the contractual relationship, necessitates interpretation of the [CBA]."); Steinbach v. Dillon Cos., 253 F.3d 538, 540 (10th Cir. 2001) (holding that a tortious interference claim alleging that a third party caused the employer to wrongfully terminate an employee was preempted by § 301 where the claim required a determination of whether the employer failed to perform the contract); Kimbro v. Pepsico, Inc., 215 F.3d 723, 727 (7th Cir. 2000) (holding that an employee's state law claims for tortious interference with contract against a supervisor and a third party were preempted by § 301 where the claims would require interpretation of the CBA); Oberkramer v. IBEW-NECA Service Center, Inc., 151 F.3d 752 (8th Cir. 1998) (holding that employee's tortious interference with contract claim, alleging that supervisor wrongly caused employer to breach its employment contract with employee, was preempted by LMRA, since resolution of

7

As for plaintiff's intentional infliction of emotional distress claim, plaintiff represents in his brief that his claim with respect to defendant UPS is based on his belief that UPS, by placing him "out of service" on nine occasions during his career at UPS, caused him to constantly worry about being terminated. UPS submits that its decisions to place Fleming "out of service," as well as its decision to ultimately terminate him, were based on plaintiff's misconduct in violation of the collective bargaining agreement. UPS contends that in order to consider plaintiff's claim, the court would need to interpret the agreement and decide whether UPS acted within its rights under the agreement in imposing discipline. As such, UPS asserts, and the court agrees, this claim is preempted by the LMRA and should be dismissed.

Fleming's claim of intentional infliction of emotional distress against defendant Bates appears to be based on a March 18, 2004 incident in which Bates allegedly became enraged and yelled at Fleming when he returned to UPS following his termination to pick up his personnel file.[6] Bates submits that

---

claim would require determination of whether supervisor caused employer to breach the collective bargaining agreement).

[6] In his brief, plaintiff also alleges that "Bates became part of the harassment of Mr. Fleming by having Mr. Fleming terminated in January 2003, when it was obvious that Mr. Fleming could not be terminated for an accident he reported." It is unclear to the court whether this assertion is intended to refer to Bates' role in plaintiff's termination in January 2004 or to his involvement in both that and the prior repeated "out of service" designations that Fleming experienced throughout his

this claim, like the others, is subject to preemption because his actions on that occasion were related to plaintiff's termination. Alternatively, he contends that the conduct at issue does not rise to the level of "extreme and outrageous" necessary to support a claim for intentional infliction of emotional distress under Mississippi law.

The court need not decide whether this claim based on an incident that occurred nearly two months following plaintiff's termination is sufficiently removed from Fleming's employment/ termination to escape LMRA preemption because it is manifest that as a matter of law, the facts claimed by plaintiff do not constitute intentional infliction of emotional distress.

> In order for [a plaintiff] to prevail on a claim of intentional infliction of emotional distress, he must prove [defendant's] conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Brown v. Inter-City Fed. Bank, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Under our law, liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. Id. Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. Id. "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 654 (5th Cir. 1994).

---

career with UPS.  In either event, this claim would be subject to preemption.

9

Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004) (finding that plaintiff's claims that employer called him a thief and made remarks about his Italian heritage were not so extreme and outrageous as to justify redress); Speed v. Scott, 787 So.2d 626 (Miss. 2001) (holding that employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for intentional infliction of emotional distress); see also Jenkins v. City of Grenada, Miss., 813 F. Supp. 443, 446 (N.D. Miss. 1993)("Meeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi.").

Even viewing the evidence in the light most favorable to plaintiff, one cannot reasonably conclude that the alleged incident arose to the level of "extreme and outrageous." Accordingly, the court concludes that Bates' motion for summary judgment on this claim should be granted.

Based on the foregoing, it is ordered that defendants' separate motions for summary judgment are granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this the 29th day of November, 2005.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

10